IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NEWPORT ENTERPRISES,<br><br>          Plaintiff,<br><br>     v.<br><br>ISYS TECHNOLOGIES, et al.<br><br>          Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:11-cv-330<br><br>Judge Robert J. Shelby |

This motion is part of a broader lawsuit involving a number of companies and individuals.  Isys Technologies, Coded Instruction Security Corporation (CISC), and Jason Sullivan (Isys's CEO) are Defendants and Third-Party Plaintiffs.  In their Third-Party Complaint, Third-Party Plaintiffs brought thirteen causes of action, along with alter ego allegations, against Jeff and Kelly Clausius.  The Clausiuses now move for summary judgment on all Third-Party Plaintiffs' claims and the alter ego theory.  For the reasons stated below, the court grants the Clausiuses' motion.

## BACKGROUND

Isys entered into a Master Development Agreement with Newport Enterprises that required Newport Enterprises to develop a computer called the Xi3.  While Newport Enterprises was developing the Xi3, a number of investors involved in the project created a separate business entity, CISC, to develop software that would be embedded in the Xi3 and would prevent third parties from manufacturing the Xi3 hardware without permission.  The parties referred to the software as the security schema.  Isys licensed the Xi3 to Computive, which gave Computive the

right to sell the product.  In exchange, Computive helped fund Newport Enterprises'

development of the Xi3.  The movants, Mr. and Mrs. Clausius, worked at Newport Enterprises.

Mr. Clausius was an officer and held a minority ownership interest.  Ms. Clausius was an

administrative assistant.

Isys and Newport Enterprises' Master Development Agreement contemplated that

Newport Enterprises would carry out specific, discrete projects during the Xi3 development.  The

agreement required that each specific project be memorialized in a separate Statement of Work.

The parties executed Statement of Work Number 1 contemporaneously with the Master

Development Agreement.  Statement of Work Number 1 required Newport Enterprises to design

an alpha prototype of the Xi3.  After Newport Enterprises completed the alpha prototype, it

completed the beta prototype and began work on the gamma prototype.  However, the parties did

not complete another Statement of Work that governed the beta or gamma prototypes.

While Newport Enterprises worked on the beta and gamma prototypes, Isys paid most of

Newport Enterprises' operational costs.  Eventually, Isys attempted to negotiate with Computive

to provide an additional $10 million in funding.  The negotiations were unsuccessful and Xi3

development activities ultimately stopped.  Isys then demanded that Newport Enterprises turn

over the Xi3 prototype work product, but Newport Enterprises refused to do so until its

outstanding invoices were paid.

Newport Enterprises sued Third-Party Plaintiffs.  Third-Party Plaintiffs then

counterclaimed against Newport Enterprises and brought third-party claims against a number of

other parties, including Mr. and Mrs. Clausius.  The Clausiuses then counterclaimed against

Third-Party Plaintiffs.  The Clausiuses seek summary judgment on Third-Party Plaintiffs'

thirteen claims: (1) inducing breach of contract, (2) breach of fiduciary duty, (3) constructive

fraud, (4) breach of duty of good faith and fair dealing, (5) fraud in the inducement, (6) promissory estoppel, (7) interference with current economic relations, (8) interference with prospective economic relations, (9) unfair competition, (10) misappropriation of trade secrets, (11) conversion, (12) defamation, and (13) malicious prosecution.  The Clausiuses also seek summary judgment on Third-Party Plaintiffs' alter ego theory.  At the hearing on the Clausiuises' summary judgment motion, Third-Party Plaintiffs withdrew all claims against Ms. Clausius and a number of claims against Mr. Clausius.  The claims remaining against Mr. Clausius are for constructive fraud, breach of duty of good faith and fair dealing, promissory estoppel, misappropriation of trade secrets, conversion, and defamation.  Third-Party Plaintiffs also maintain their alter ego theory.  The court will address each in turn.

**ANALYSIS**

## I.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[2]  Importantly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3]

A defendant moving for summary judgment "may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[4]  To survive summary judgment, the nonmovant must cite specific record

---

[1] FED. R. CIV. P. 56(a).
[2] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

evidence that is relevant to the material facts.[5]  Merely stating in an opposition memorandum that

factual disputes exist is insufficient.

## II.  Rule 37 Sanctions

In their Motion, the Clausiuses contend that the court should dismiss Third-Party

Plaintiffs' claims because Third-Party Plaintiffs failed to make their initial damages disclosure

under Federal Rule of Civil Procedure 26.  Rule 26 requires parties to disclose a computation of

damages and supporting evidence.[6]  If a party fails to make its disclosure, and also fails to

supplement an incomplete disclosure under Rule 26(e), its opponent may seek sanctions under

Rule 37.[7]  Rule 37 sanctions range from exclusion of evidence to dismissal.[8]

Third-Party Plaintiffs submitted the following initial disclosure regarding damages:

> Where permitted by law lost profits, actual, consequential and punitive damages
> and/or disgorgement of profits or benefit for breach of contract, unjust
> enrichment, breach of good faith and fair dealing, fraud, estoppels, business
> interference, unfair competition, misappropriation of trade secrets, conversion,
> defamation, alter ego liability, breach of fiduciary duty and/or malicious
> prosecution.

The disclosure included neither a computation of damages nor supporting documents.  The

deadline to supplement disclosures pursuant to Rule 26(e) was July 6, 2012.  Third-Party

Plaintiffs made no supplemental disclosures.  Instead, Third-Party Plaintiffs erroneously argue in

response to the Clausiuses' Motion that Rule 26 permitted them to supplement their initial

disclosures through Mr. Sullivan's deposition testimony, which took place on August 8, 2012,

over a month after supplemental disclosures were due.

---

[5] *See* FED. R. CIV. P. 56(c)(2)–(3); *Jones, Waldo, Holbrook & McDonough v. Cade*, 98 F. App'x 740, 751 (10th
Cir. 2004) (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).
[6] FED. R. CIV. P. 26(a)(1)(A)(iii).
[7] FED. R. CIV. P. 37(c).
[8] *Id.*

Despite Third-Party Plaintiffs' apparent failure to comply with their Rule 26 obligations, the Clausiuses improperly leap over Rule 37 in their summary judgment motion, assuming the imposition of sanctions for an alleged rules violation that was not presented to the court. Because the Clausiuses elected not to file a Rule 37 motion, the court has not evaluated the sufficiency of Third-Party Plaintiffs' damages disclosure, has not made a finding that Third-Party Plaintiffs failed to comply with Rule 26, has not considered whether any such failing was justified or harmless, and has not engaged in an analysis concerning the appropriate sanction to impose, if any.  Rather, the Clausiuses ask the court to exclude all evidence of damages on the basis of a Rule 26 violation the court has not previously considered—without notice to Third-Party Plaintiffs, and without an opportunity for Third-Party Plaintiffs to respond in the context of the Rule 37 sanctions framework.  This failing is highlighted by the fact that the parties have not briefed the *Ehrenhaus* factors[9] utilized in this circuit when evaluating Rule 37 sanctions.  Having made no findings, and having entered no order excluding any evidence from trial, the court declines the Clausiuses' invitation to grant summary judgment on the basis that Third-Party Plaintiffs will be unable to present sufficient damages evidence at trial to support a jury verdict in their favor.  In light of this, the court addresses the merits of the remaining claims asserted against Mr. Clausius.

## III. Constructive Fraud

Constructive fraud has two elements: "(i) a confidential relationship between the parties; and (ii) a failure to disclose material facts."[10]  "The doctrine of confidential relationship rests upon the principle of inequality between the parties, and implies a position of superiority

---

[9] *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).
[10] *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 526 (Utah Ct. App. 2006).

occupied by one of the parties over the other."[11]   The mere existence of an arm's length

transaction does not establish a confidential relationship.[12]   Third-Party Plaintiffs point to no

specific record evidence that shows Mr. Clausius had a confidential relationship with them.  In

the absence of such evidence, the court concludes that Third-Party Plaintiffs cannot carry their

ultimate burden of persuasion at trial and a reasonable jury could not find that a confidential

relationship exists.  Thus, the constructive fraud claim fails.

## IV.  Breach of Good Faith and Fair Dealing

In Utah, "good faith and fair dealing are implied terms of every contract."[13]  The duty of

good faith and fair dealing "arises out of the relationships between the parties" to the contract.[14]

Mr. Clausius was not a party to any contract with Third-Party Plaintiffs.  And Third-Party

Plaintiffs cite to no Utah law supporting the proposition that individuals who are not parties to a

contract may be held liable for breach.  Of course, alter ego liability allows a plaintiff to pierce

the corporate veil and provides a means for holding individuals liable for corporate conduct.

However, Third-Party Plaintiffs disclaimed that theory of recovery for breach of good faith and

fair dealing at the hearing on the motion.  Further, Third-Party Plaintiffs' briefing did not oppose

Mr. Clausius's argument regarding breach of good faith and fair dealing.  The claim is dismissed.

## V.  Promissory Estoppel

Promissory estoppel is "an affirmative cause of action or defense, which arises in

instances where no formal contract exists and the party seeking promissory estoppel is

---

[11] *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985).
[12] *See Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1064 (Utah 1996).
[13] *Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716, 722 (Utah 2009).
[14] *Id.*

attempting to prove the existence of an enforceable promise or agreement."[15]  To prove a claim

for promissory estoppel, a plaintiff must show that

> (1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise
> made by the defendant; (2) the defendant knew that the plaintiff had relied on the
> promise which the defendant should reasonably expect to induce action or
> forbearance on the part of the plaintiff or a third person; (3) the defendant was
> aware of all material facts; and (4) the plaintiff relied on the promise and the
> reliance resulted in a loss to the plaintiff.[16]

Third-Party Plaintiffs point to no record evidence that Mr. Clausius made any promises to them.

Therefore, no reasonable jury could find that Third-Party Plaintiffs "acted with prudence and in

reasonable reliance on a promise made by [Mr. Clausius]."  The claim is dismissed.

## VI.  Misappropriation of Trade Secrets

To prove a claim for misappropriation of trade secrets, a plaintiff must show "(1) the

existence of a trade secret, (2) communication of the trade secret to [the defendant] under an

express or implied agreement limiting disclosure of the secret, and (3) [defendant]'s use of the

secret that injures [the proponent]."[17]

Third-Party Plaintiffs have failed to submit evidence that Mr. Clausius used Isys's trade

secrets.  Mr. Clausius's involvement in the alleged trade secret misappropriation is attenuated at

best.  When Newport Enterprises stopped developing the Xi3, Jimmy Sheffield (the Xi3 head

developer) started his own company and began designing a computer product named the MCC.

Third-Party Plaintiffs allege that Mr. Sheffield used the Xi3 hardware designs to develop the

MCC.  Third-Party Plaintiffs also allege that Mr. Sheffield convinced Chuck Lewis, a software

designer at CISC, to provide the security schema to Mr. Sheffield's new company.  Mr. Clausius

---

[15] *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092–93 (Utah 2007) (quoting *Mile High Indus. v. Cohen*, 222 F.3d 845, 859 (10th Cir. 2000)).

[16] *Id.*

[17] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 323 (Utah Ct. App. 2012) (quoting *Water & Energy Sys. Tech., Inc. v. Keil*, 974 P. 2d 821, 822 (Utah 1999)).

managed Newport Enterprises' computer networks.  Third-Party Plaintiffs contend that Mr.
Clausius misappropriated Isys's trade secrets by failing to prevent Mr. Sheffield—the Xi3 head
engineer—from obtaining the Xi3 designs.  Yet, Third-Party Plaintiffs point to no specific
evidence that Mr. Clausius used or disclosed trade secrets.  And there is no evidence that Mr.
Clausius gave or allowed Mr. Sheffield to take the designs.  A reasonable jury could not conclude
that Mr. Clausius misappropriated trade secrets.

**VII. Conversion**

Utah's economic-loss rule bars the conversion claim.  Conversion is "an act of willful
interference with property, done without lawful justification, by which the person entitled to
property is deprived of its use and possession."[18]  Third-Party Plaintiffs appear to proceed on
four separate theories of conversion.  First, Third-Party Plaintiffs contend that Newport
Enterprises converted an $80,000 deposit from Isys to pay past due payroll taxes.  The deposit
was an upfront payment pursuant to Statement of Work Number 1.  Second, Third-Party
Plaintiffs allege that Newport Enterprises misapplied funds supplied by Isys for development of
the subsequent prototypes.  Although there was not a written Statement of Work covering the
second and third prototype, the parties continued their relationship based on a mutual
understanding that Newport Enterprises would continue to develop the Xi3 and Isys would
continue to pay operational costs.  Third, Third-Party Plaintiffs contend that Newport Enterprises
converted the prototype work product by refusing to deliver the work product to Isys unless Isys
first paid Newport Enterprises' outstanding invoices.  Fourth, Third-Party Plaintiffs contend that
Newport Enterprises converted other computer equipment when Newport Enterprises refused to
deliver the equipment until Isys paid outstanding invoices.

---

[18] *Bennett v. Huish*, 155 P.3d 917, 928 (Utah Ct. App. 2007).

The alleged conversion connected to each theory is related to the parties' contractual relationship. The economic-loss rule establishes that "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed on."[19] Although it is disputed whether the Master Development Agreement governed certain parts of the parties' relationship, it is undisputed there was a continuing contractual relationship in which Newport Enterprises developed the Xi3 in exchange for payments from Isys. The conversion claim arises out of that relationship. The allegedly misapplied payments were made pursuant to the parties' agreements, and for use in performing the agreements. Also, Newport Enterprises withheld delivery of the prototypes and equipment based on Isys's purported failure to make outstanding payments allegedly owed pursuant to the parties' agreements. In the end, the court concludes that the conversion claim is in all respects related to the subject matter of the parties' agreements and is therefore barred by the economic-loss rule. Third-Party Plaintiffs point to no record evidence or controlling law to argue that the claim otherwise survives the economic-loss rule.

## VIII.  Defamation

Third-Party Plaintiffs contend that Mr. Clausius made defamatory remarks in "late '07 to mid '08" and that Mr. Sullivan was aware of those remarks. The statute of limitations for defamation is one year[20] and "begins to run when the defamation is known or reasonably

---

[19] *Lee v. Thorpe*, 147 P.3d 443, 446 (Utah 2006) (internal quotation marks omitted).
[20] Utah Code § 78B-2-302(4); *Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 917 (D. Utah 1992).

discoverable by the plaintiff."[21]  Third-Party Plaintiffs sued Mr. Clausius in 2011.  The

defamation claim was filed outside the statute of limitations and is dismissed.[22]

## IX.  Alter Ego

Alter ego is a remedy that allows courts to disregard the corporate form and hold

individual actors liable for the acts of a corporation.[23]  To support this theory, Third-Party

Plaintiffs assert that Mr. Clausius "used revenue belonging to Newport for product development

to provide funds for the payment of [his] tax obligation."  Third-Party Plaintiffs do not cite any

record evidence to support this contention.  The alter ego theory is therefore dismissed.

## CONCLUSION

For the reasons stated, the court GRANTS the Clausiuses' Motion (Dkt. 73) and

DISMISSES WITH PREJUDICE Third-Party Plaintiffs' claims and alter ego theory against the

Clausiuses.

SO ORDERED this 7th day of August, 2015.


BY THE COURT:


ROBERT J. SHELBY
United States District Judge

---

[21] *Watkins*, 805 F. Supp. at 917.
[22] Third-Party Plaintiffs argue that their defamation claim is governed by a four-year statute of limitations for unfair competition under the Lanham Act.  The court declines to give effect to Third-Party Plaintiffs' attempt to recast their claim at this late stage, in response to a motion for summary judgment.
[23] *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012).